

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Albert J. Hutson
County Attorney
Trinity County
Groveton, Texas

Dear Sir:

> Opinion No. O-2011
> Re: Construction of House Bill No.
> 730, Acts of the 44th Legisla-
> ture, Regular Session, 1935,
> and Section 1a of Article 2700d-
> 12, Vernon's Civil Annotated
> Statutes, House Bill No. 451,
> Acts of 45th Legislature, Regular
> Session, 1937.

Your recent request for an opinion of this de-
partment on the questions as are herein stated has been
received.

Your letter reads in part as follows:

"Does the County Board of Trustees of
Trinity County, (population according to the
last Federal Census 15,637) have the author-
ity to set aside from the Available School
Fund of the County an amount of money not to
exceed $400. for office and traveling expenses
of the County Superintendent, and in addition
thereto, the authority to set aside from the
said Available School Fund any amount not to
exceed $600. for the expenses of the County
Board of Trustees in the administration of the
scholastic affairs of the County?

"In other words, does House Bill No.
451, passed by the 45th Legislature, Regular
Session, (Vernon's R.C.S. Art. No. 2700d-12)
conflict with, and therefore repeal, H. B.

Hon. Albert J. Hutson, Page 2

No. 730, passed by the 44th Legislature, Regular Session?"

Section 1-a, Article 2700d-12 reads in part as follows:

"In counties having a population of not less than thirteen thousand, six hundred and thirty-seven (13,637) and not more than thirteen thousand, six hundred and forty (13,640) according to the last preceding Federal Census, the County Boards of Trustees may make such provisions as they deem necessary for office and traveling expenses of the County Superintendent of Public Instruction; provided that the amount of such expenditures for office and traveling expenses shall not exceed the sum of Six Hundred Dollars ($600) per annum. The amount allowed shall be paid in the manner and in accordance with now existing laws governing the maintenance of the office of the County Superintendent;...."

Section 1 of House Bill No. 730, Acts of the 44th Legislature, 1935, Regular Session, reads in part as follows:

"Section 1. That in each county of this State with a population of not less than thirteen thousand six hundred (13,600) and not more than thirteen thousand, six hundred fifty (13,650),......as shown by the Federal Census last preceding such action, the County Board of Trustees is hereby authorized to set aside from the available school fund of the county, in accordance with the provisions of the general law governing the assessment for the support of the County Superintendent's office, an amount not to exceed Six Hundred Dollars ($600) to defray the expenses of the County Superintendent and the County Board of Trustees in the administration of the scholastic affairs of the county."

As above stated, according to the last preceding Federal Census, Trinity County has a population of thirteen thousand six hundred thirty-seven (13,637) inhabitants, thus falling with the provisions of the above mentioned statutes, namely, "having a population of not less than thirteen thousand six hundred thirty-seven (13,637) and not more than thirteen thousand six hundred forty (13,640) according to the last preceding Federal Census," and "that each county of this state with a population of not less than thirteen thousand six hundred (13,600) and not more than thirteen thousand six hundred fifty (13,650)."

Trinity County is the only county in the State which, according to the last Federal Census, had a population within the limits specified in the provisions of the statutesabove mentioned.

Section 56, Article 3 of the State Constitution reads in part as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special laws, authorizing.... regulating the affairs of counties, cities, towns, wards or school districts;....and in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing special laws for the preservation of game and fish of this State in certain localities."

The case of Smith vs. State, 49 SW 2d 739, holds in effect that if substantial reason for classifying municipalities by population appears, such classification and legislation applicable to such classification is generally sustained. However, the constitutional prohibition against special laws cannot be evaded by making laws applicable to

a pretended class, and that a statute classifying muni-
cipalities by population is "special" if the population
does not afford a fair basis for classification; if the
statute merely designates a single municipality under
the guise of classifying by population; and that a valid
classification of municipalities by population must not
exclude other municipalities from entering such classi-
fication on attaining the specified population.

We quote from this case as follows:

"In this State it is the rule that the
Legislature cannot evade the prohibition of
the Constitution as to special laws by making
a law applicable to a pretended class, which
is, in fact, no class. Clark vs. Finley,
supra. The court in other jurisdictions have
given effect to the same principle. Com. v.
Patton, 88 Pac. 258; Board of Commissioners
of Cwen County, et al v. Spangler, et al, 159
Ind. 575, 65 NE 743. In Clark v. Finley, supra,
the Supreme Court of our State said:

"'In so far as the courts which
undertake to define the basis upon
which the classification must rest
hold that the Legislature cannot, by
a pretended classification, evade a
constitutional restriction, we fully
concur with them. But if they hold
that a classification which does not
manifest a purpose to evade the Con-
stitution is not sufficient to sup-
port a statute as a general law mere-
ly because, in the court's opinion,
the classification is unreasonable,
we are not prepared to concur. To
what class or classes of persons or
things it should apply is, as a gen-
eral rule, a legislative question.
When the intent of the Legislature
is clear, the policy of the law is a
matter which does not concern the
courts.'

"If the classification of cities or counties

Hon. Albert J. Wutson, Page 5

is based on population, whether an act is
regarded as special and whether its opera-
tion is uniform throughout the State, de-
pend upon whether population affords a fair
basis for the classification with reference
to the matters to which it relates, and
whether the result it accomplishes is in
fact the real classification upon that basis,
and not a designation of a single city or
county to which alone it shall apply, under
the guise of such classification. Parker-
Washington County v. Kansas City, 73 Kan.
722, 85 P. 781." (Also see the cases of Ex
Parte Sizemore, 8 SW 2d 134, and Randolph
v. State, 36 SW 2d 484).

The case of Bexar County v. Tynan, et al, 97
SW 2d 467, holds in effect that the legislature may on
a proper and reasonable classification enact a general
law which, at the time of its enactment, is applicable
to only one county, provided the application is not so
inflexibly fixed as to prevent it ever becoming applicable
to other counties and that the legislature may classify
counties on basis of population for purposes of fixing
compensation of county and precinct officers, but such
classification must be based on real distinction and must
not be an arbitrary device to give what is in substance a
local or special law, the form of a general law. And the
case further holds that the courts in determining whether
a law is public, general, special or local, will look to
the substance and practical operation rather than to its
title, form, phraseology, since otherwise a prohibition
of the fundamental law against special legislation would
be nugatory; and to justify placing one county in a very
limited and restricted classification by the legislature,
there must be some reasonable relation between the situa-
tion of the counties classified and purposes and objects
to be attained, and classification cannot be adopted arbi-
trarily on a ground which has no foundation in difference
of situation or circumstances of counties placed in dif-
ferent classes. The act reducing salaries of officers in
counties of over two hundred and ninety thousand and less
than three hundred and ten thousand population was held un-

reasonable and arbitrary in its classification and void as a special law.

We quote from the above mentioned opinion as follows:

"The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified in the purpose and the object to be attained. There must be something .... which in some reasonable degree accounts for the division into classes."

Article 2700, Vernon's Civil Annotated Statutes, the general statute, regarding salaries, expenses for assistants, expenditures for office and traveling expenses of county superintendents in counties having a scholastic population as therein stated, which includes all counties, reads in part as follows:

"The county board of trustees may make such further provision as it deems necessary for office and traveling expenses for the county superintendent and any assistant he may have; provided that expenditures for office and traveling expenses shall not exceed three hundred dollars per annum, and the county board of trustees may make provisions for the employment of a competent assistant for the county superintendent who shall, in addition to his other duties, act as attendance officer; and said board is hereby authorized to fix the salary of such assistant and pay the same out of the same funds from which the salary and expenses of the county superintendent are paid;...."

The above mentioned article applies to all counties regardless of their population. In so far as the

Hon. Albert J. Hutson, Page 7

amount which may be expended for office and traveling expenses of the county superintendent, it fixes the maximum at three hundred dollars per annum. Counties with a smaller or larger population than Trinity County are limited in their expenditure for such expenses to said sum. It is, therefore, apparent that the Legislature intended that the acts under consideration should apply only to Trinity County. Such acts were for this and other reasons condemned by the Supreme Court in Bexar County v. Tynan, supra.

Article 2687, Vernon's Civil Annotated Statutes, reads in part as follows:

"The County School Trustees shall hold meetings once each quarter, on the first Monday in August, February, May, and November, or.as soon thereafter as practicable, and at other times when called by the President of the County School Trustees or at the instance of any two (2) members of the County School Trustees and the County Superintendent, the meeting place to be at the county seat and in the office of the County Superintendent. Each. Trustee shall be paid Three Dollars ($3) per day, but not to exceed Thirty-six Dollars ($36) in any one year, for the time spent in attending such meetings, out of the State and County Available School Fund by warrants drawn on order of the County Superintendent and signed by the President of the County School Trustees, after approval of the account, properly sworn to by the President of the County School Trustees...."

This statute provides compensation for said trustees, but does not allow any traveling expenses for them. This statute applies to Trinity County.

The question of whether, after the next Federal Census, other counties will come under the provisions of the above mentioned acts or whether the acts themselves will become inoperative by reason of the fact that no other county will have a population falling within the brackets created in these acts, is so uncertain as to make

it clearly speculative. Cf course, it is possible that a number of counties will have the population required, but it is highly probably by reason of the limit within the brackets that not a single county will qualify under the provisions of the acts.

We have here an instance of arbitrary designation, rather than classification. The above quoted statutes attempt to regulate the affairs of Trinity County in a manner violative of Article 3, Section 56 of the Constitution.

Therefore, you are respectfully advised that it is the opinion of this department that the provisions of Article 2700d-12 and House Bill No. 730, Acts of the 44th legislature, 1935, as they apply to Trinity County, are special laws, and therefore, unconstitutional and void.

Trusting that the foregoing fully answers your inquiry, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

AW:AW

APPROVED MAR 15, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTE.
BY BWT.
CHAIRMAN